FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>    v.<br><br>102.38 ACRES OF LAND, MORE OR LESS, SITUATED IN GRANT COUNTY, STATE OF WASHINGTON; JEFF T. and LYNN M. DIERINGER, husband and wife; MARK J. and CHRISTI DIERINGER, husband and wife; JOSE G. VILLANUEVA; and EPIFANIA O. MERCADO,<br><br>    Defendants. | No. 2:22-CV-00111-SAB<br><br>**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court are (1) Plaintiff's Rule 71.1 Motion to Determine the Larger Parcel,[1] ECF No. 106; (2) Defendants' Motion for Summary Judgment on the Issue of Just Compensation, ECF No. 90; (3) Plaintiff's Motion to Strike Defendants' Rebuttal Expert Reports, ECF No. 86; (4) Defendants' Motion to Exclude Testimony and Report of Plaintiff's Expert Rob Steinke, ECF No. 99; and

---

[1] While captioned as a request for the Court to determine the larger parcel, Plaintiff's Motion asks the Court to find that the condemned property was not part of a larger parcel.

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 1**

(5) Defendants' Motion to Exclude Testimony and Report of Plaintiff's Expert Dennis Bortz, ECF No. 101. The Court held a hearing on the Rule 71.1 Motion by videoconference on December 30, 2024.[2] Plaintiff was represented by Emma Hollowell, Seth Mohney, Derek Taylor, and Joshua Fliegel—Mr. Fliegel presented arguments on behalf of Plaintiff. Defendants were represented by Kevin Bay and Julia Fleming—Mr. Bay presented arguments on behalf of Defendants.

At the hearing, the Court took the Rule 71.1 Motion under advisement.

## Background

Defendants operated a dairy in Moses Lake from 1991 to 2022. The dairy operations began when Defendants purchased the "Parlor Site" in 1991. The Parlor Site is a 102-acre parcel that included a milking parlor, barns, and irrigated cropland. Appurtenant to the Parlor Site were three water rights (the "Water Rights") that were also owned by Defendants and used to support the herd by irrigating the 40 acres of crops located on the Parlor Site. In addition to the Parlor Site, between 1998 and 2019, Defendants acquired seven additional parcels totaling more than 500 acres (the "Croplands") that were used to support the herd by growing crops, spreading manure, and other farm-related activities.

Plaintiff filed this condemnation action on May 13, 2022, pursuant to the Declaration of Taking Act, 40 U.S.C. § 3114. Plaintiff filed its Declaration of Taking (the "Declaration") that same day. Schedule E of the Declaration states, "The estate taken in the property defined in Schedule C is fee simple, together with all buildings, improvements, and any fixtures attached thereto, excepting any water rights."

On August 18, 2022, Plaintiff deposited $1,900,000 into the Court Registry, thus acquiring title to the Parlor Site—however, the Court specifically ordered Defendants to transfer *possession* of the Parlor Site to Plaintiff by November 1,

---

[2] The remaining Motions were considered without oral argument.

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 2**

2022, and Defendants did not actually vacate the property until that date.[3] In the period between August 18 to October 31, 2022, as well as November 21 to December 21, 2022, Defendants removed agricultural installations and equipment (the "equipment") from the Parlor Site. On February 14, 2023, the parties filed a Stipulation Regarding Classification of Removed Items (the "Stipulation"). The Stipulation states that the parties agreed that any of the equipment removed by Defendants would be classified as personal property.

Thus, the taking included any buildings, improvements, and fixtures on the Parlor Site, but specifically excluded: (1) any of the equipment salvaged by Defendants; (2) the Water Rights; and (3) the Croplands. Following the seizure of the Parlor Site, Defendants acquired a new 360-acre milking parlor and other facilities for $4,400,000 (the "Roylance Dairy"). Defendants subsequently sold the Water Rights to the City of Moses Lake for $705, 626 and are now using the Croplands (and presumably the equipment) to support operations at Roylance Dairy.

At issue in this lawsuit is what dollar amount is "just compensation" for the land that was taken by the United States. Plaintiff hired two experts, Dennis Bortz and Rob Steinke, who opined that the fair market value of the Parlor Site was $445,000 and $491,000 respectively. Bortz and Steinke's opinions were based on the assumptions that the Parlor Site (1) did not have sufficient water rights to support a 500-cow dairy and (2) the Parlor Site lacked sufficient equipment necessary to support a dairy. They concluded that the highest and best use of the Parlor Site was dry grazing land.

Defendants hired one expert, Brian O'Connor, who opined the fair market value of the Parlor Site was $3,865,000. O'Connor's opinion was based on the

---

[3] Defendants filed a motion to extend the deadline to transfer possession, which the Court denied.

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 3**

assumptions that (1) the Parlor Site had sufficient water rights and equipment to operate a dairy and (2) the Parlor Site was integrated with the Crop Lands and the Water Rights, creating an integrated parcel. Based on these assumptions, O'Connor concluded that the highest and best use of the integrated parcel was a dairy. He then conducted a "before and after analysis" wherein he subtracted the present value of the integrated parcel from its value on August 18, 2022 ($11,600,000-$7,735,000).

## Legal Framework

The Fifth Amendment of the United States Constitution provides that the government may not condemn private property for public use without providing the owner with "just compensation." *United States v. Miller*, 317 U.S. 369, 373 (1943). The Supreme Court "has never attempted to prescribe a rigid rule for determining what is 'just compensation' under all circumstances and in all cases." *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950). Normally, however, just compensation is calculated as the marketplace value of the parcel on the date of the taking; in other words, just compensation is "what a willing buyer would pay in cash to a willing seller" on the date of taking. *Miller*, 317 U.S. at 374. To determine market value, courts must consider all the facts and circumstances related to a purchase and sale. *United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir. 1980). The landowner bears the burden of establishing the value of the condemned property. *Id*.

Determining just compensation is an objective analysis of market value and does not consider any special use of the property for the landowner or the government. *United States v. Petty Motor Co.*, 327 U.S. 372, 377 (1946). The Ninth Circuit has specifically held that "losses to a business are not for consideration." *United States v. Honolulu Plantation Co.*, 182 F.2d 172, 176 (9th Cir. 1950). Furthermore, evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses do not factor in the

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 4**

determination of just compensation n federal condemnation proceedings. *Petty Motor Co.*, 327 U.S. at 377–78.

### I. Plaintiff's Rule 71.1 Motion to Determine the Larger Parcel

Fed. R. Civ. P. 71.1 governs the procedure to be followed in all cases of the condemnation of property under the power of eminent domain. Rule 71.1(h)(1) provides that the district court shall decide all issues including just compensation. Pursuant to this provision, Plaintiff asks the Court to find that the Parlor Site was not part of a larger parcel and to ignore evidence regarding the value of any property not taken (i.e., the Water Rights and the Croplands). In response, Defendants ask the Court to find that the Parlor Site was part of a larger parcel that also included the Water Rights and the Croplands.

In addition to the value of the condemned property itself, the owner of a condemned parcel of land may also be entitled to compensation for the loss in market value to another owned parcel or parcels. *Honolulu Plantation Co.*, 182 F.2d at 179. This type of condemnation is sometimes referred to as a "partial taking." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). The value of compensable diminution to the remainder parcel in a partial taking is often referred to as "severance damages." *United States v. 760.807 Acres of Land, More or Less, Situate in City & Cnty. of Honolulu, State of Hawaii*, 731 F.2d 1443, 1447 (9th Cir. 1984). A landowner is only entitled to severance damages if the partial taking results in a direct loss to the marketplace value of the remainder, and the landowner bears the burden of demonstrating this loss. *Id.* at 1448.

To determine whether a condemned parcel is part of a larger parcel, courts consider three elements: (1) unity of ownership, (2) physical unity, and (3) unity of use. *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cnty., State of Tex.*, 680 F.2d 388, 393 (5th Cir. 1982). Severance damages cannot be recovered where there is no unity of ownership or use. *United States v. 57.09 Acres of Land, More or Less, Situate in Skamania County, State of Wash*, 706 F.2d 280,

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 5**

281 (9th Cir. 1983). Unity of ownership is satisfied so long as all of the parcels are held by the same entities in the same manner. *429.59 Acres of Land*, 612 F.2d at 463–64. Furthermore, physical unity is satisfied even if the parcels are not contiguous, so long as they share an "actual and permanent use." *Honolulu Plantation Co.*, 182 F.2d at 178–79. Therefore, the key inquiry is whether the parcels satisfy the unity of use (*i.e.*, whether they have been used and treated as a single entity). *See 429.59 Acres of Land*, 612 F.2d at 463–64. When determining unity of use, courts must consider the availability of replacement property. *See Int'l Paper Co. v. United States*, 227 F.2d 201, 207 (5th Cir. 1955).

Severance damages, as well as the value of the condemned property itself, are calculated using what is known as the "before and after method." *4.0 Acres of Land*, 175 F.3d at 1139. ("Where the taking is a partial taking, 'just compensation' is the difference between the fair market value of the whole parcel immediately before the taking and the remainder after the taking.")

Here, the Court finds that even assuming the unity of ownership is satisfied, the Parlor Site was not part of a larger parcel because the key element of unity of use has not been satisfied. The Water Rights and the Croplands may have been used to support Defendants' dairy operations on the Parlor Site at one time. But the sale of the Water Rights to the city of Moses Lake and the use of the Croplands to support the Roylance Dairy demonstrates that the parcels do not share a permanent use because they cannot be used as a single entity in the foreseeable future. Moreover, Defendants' replacement of the Parlor Site with the Roylance Dairy forecloses any unity of use argument. *See Int'l Paper Co.* 227 F.2d at 207. Because the Parlor Site was not part of a larger parcel, the motion is **granted**.[4]

---

[4] Even assuming the Parlor Site was part of a larger parcel, Defendants would not be entitled to severance damages because they conceded during the hearing that there was no diminution in value to the Croplands or the Water Rights. *See*

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 6**

## II. Defendants' Motion to Exclude Plaintiff's Experts'

Defendants ask the Court to exclude the reports of Plaintiff's experts Bortz and Steinke, contending that they used the wrong date of taking and applied the wrong appraisal method.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564. The test of reliability is flexible. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). The district court has discretion to decide how to test an expert's reliability, as well as the testimony's reliability, based on the particular circumstances of the case. *Primiano*, 598 F.3d at 564.

---

*Honolulu Plantation Co.*, 182 F.2d at 179 ("strict proof of the loss in market value to the remaining parcel is obligatory").

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 7**

The party proposing the expert witness has the burden of establishing the expert's admissibility by a preponderance of the evidence. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). In bench trials, a district court may make its reliability determination during the trial itself, as opposed to pretrial. *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (noting that gatekeeping function is less needed where a court is only keeping the gate for itself).

Here, Defendants are not challenging Bortz' and Steinke's qualifications. Nor do they challenge their methodologies; rather they assert that the methodologies were incorrectly applied to incorrect facts. Defendants' arguments go to the weight to give, Bortz and Steinke's reports, which is properly attacked by cross-examination or contrary evidence, not by exclusion. As such, the motions are **denied**. *See Primiano*, 598 F.3d at 564.

### III.    Defendants' Motion for Summary Judgment

Defendants argue that summary judgment is appropriate because Plaintiff has no admissible evidence to rebut Defendants' expert's valuation. This is based on Defendants' position that Plaintiff's expert reports should be excluded. However, because the Court denied their motion to exclude Plaintiff's experts report, Defendants' motion is **denied**.

### IV.    Plaintiff's Motion to Exclude Defendants' Rebuttal Expert Reports

Previously, the Court ordered the parties to submit initial expert disclosures by January 30, 2024, and rebuttal expert disclosures by February 29, 2024. Based on a stipulated motions by the parties, the Court extended the rebuttal disclosure deadline first to May 3, 2024, and finally to May 10, 2024. Two days before the extended deadline, Defendants disclosed reports created by Dr. Michael Hutjens and Jessica Kuchan, ostensibly to rebut the reports of Bortz and Steinke.

Plaintiff asks the Court to exclude the reports or, in the alternative, provide Plaintiff 30 days to respond to the reports because it believes the reports are not proper rebuttal

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 8**

1    An expert witness may not provide an opinion as to a legal conclusion (*i.e.*, the expert cannot give an opinion on an ultimate issue of law). *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). An expert's report must be initially disclosed in accordance with a court's scheduling order; however, if the report is "intended solely to contradict or rebut evidence on the same subject matter identified by another party," then it must be disclosed within 30 days of the disclosure it is intended to rebut. Fed. R. Civ. P. 26(a)(2)(D).

Plaintiff argues the reports should be excluded because Kuchan's report contains legal conclusions, and both experts' reports constitute evidence of Defendants' case-in-chief, as opposed to rebuttal evidence. On the other hand, Defendants asserts Kuchan's report does not reach legal conclusions on the ultimate issue and both reports should be admitted because they rebut Plaintiff's experts: Dr. Hutjens's report contradicts Plaintiff's experts' conclusions that the Parlor Site did not share an integrated use with the Croplands, while Kuchan's report contradicts Plaintiff's experts' conclusions that the Parlor Site lacked water rights.

Kuchan's report includes citations to legal sources and makes several notes opining on the law underlying the Water Rights but does not actually make any determinative conclusions as to the value of just compensation for the Parlor Site—the ultimate legal issue here (*e.g.* the report opines that the Parlor Site included water rights). Thus, while there are legal conclusions contained within Kuchan's report, they ultimately do not intrude upon this Court's function as the ultimate decider of questions of law.

Neither Kuchan's nor Dr. Hutjens's reports make any reference to Bortz's or Steinke's reports, and while some of the findings in their reports contradict the findings of Bortz and Steinke, it is not clear that the reports were "intended solely to contradict or rebut evidence on the same subject matter identified by" Bortz and Steinke. Furthermore, the reports bolster O'Connor's report, indicating they should

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 9**

have been disclosed by the initial expert disclosure deadline. Therefore, the motion is **granted in part and denied in part**. The reports shall be admitted, but Plaintiff shall have additional time to rebut them.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Rule 71.1 Motion to Determine the Larger Parcel, ECF No. 106, is **GRANTED**. The Court finds as a matter of law that the Parlor Site is not part of a larger parcel.

2. Defendants' Motion for Summary Judgment on the Issue of Just Compensation, ECF No. 90, is **DENIED.**

3. Plaintiff's Motion to Strike Defendants' Rebuttal Expert Reports, ECF No. 86, is **GRANTED IN PART AND DENIED IN PART.** Plaintiff shall submit any rebuttal to the Kuchan and Hutjens reports on or before April 30, 2025.

4. Defendants' Motions to Exclude Testimony and Report of Plaintiff's Expert Rob Steinke, ECF No. 99, and Dennis Bortz, ECF No. 101, are **DENIED.**

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 31st day of March 2025.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S RULE 71.1 MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT # 10**